```
Aaron M. Cohn, Esq. (SBN 264756)
acohn@wwhgd.com
Weinberg Wheeler Hudgins Gunn & Dial, LLP
3350 Virginia Street, Suite 500
Miami, FL 33133
Telephone: 415-200-7667
Facsimile:  305-455-9501
```
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALLY PAGE,<br><br>             Plaintiff,<br><br>vs.<br><br>RESPONSE MARKETING GROUP, LLC, a Utah limited liability company, and MARK BROBERG,<br><br>             Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Sally Page ("Page"), hereby sues Defendants, Response Marketing Group, LLC d/b/a Interactive Trader ("Interactive Trader") and Mark Broberg ("Broberg") (collectively "Defendants"), for damages, and alleges as follows:

## NATURE OF THE CASE

1.      Defendants provide instructional training seminars on how to invest using options, among other financial instruments.

2. They claim that they do not provide investment advice. In reality, however, Defendants use their relationships developed through training seminars with students to induce investments in third parties in exchange for kickbacks and other benefits.

3. Page, who is nearing retirement, lost more than $2.7 million — amounting to most of her life's savings — in a leveraged precious metals investment scheme promoted by Defendants after they built a relationship of trust and confidence with her through one of their investment seminars hosted in San Jose, California.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), as the Plaintiff is diverse from each named Defendant, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district. Specifically, Defendants provided a multi-day, in-person seminar to Page in San Jose, California, which was used by Defendants to create a relationship of trust that Defendants exploited to induce Page's investments in an unlawful, leveraged precious metals scheme that lost her millions of dollars.

## PARTIES

6. Plaintiff Page is an individual who resides in Saratoga, California.

7. Defendant Response Marketing Group LLC d/b/a Interactive Trader is a limited liability company formed under the laws of the State of Utah, and has its principal place of business in Lindon, Utah. The sole member of Interactive Trader is Mike Dayton, who resides in Orem, Utah and is a citizen of the State of Utah.

8. Defendant Mark Broberg ("Broberg") is an individual who resides in Lindon, Utah. Broberg is a citizen of the state of Utah. At all material times, Broberg acted for himself and on behalf of Interactive Trader as its agent.

## STATEMENT OF THE FACTS

9. Interactive Trader markets itself as a "direct-to-consumer stock and options education and training company" that does not "sell a business opportunity, 'get rich quick' program or money-making system." Interactive Trader claims on its website that it does "not make earnings claims, efforts, claims, return on investment claims, or claims that our training will make you any money." *See* Exhibit 1.

10. In February, 2019, Interactive Trader provided a two and a half day in-person training seminar on investing in options (financial derivatives) in San Jose, California.

11. Page learned of the course and paid to attend, where she met the instructor for Interactive Trader, Mark Broberg.

12. At the seminar, Broberg sold himself as an FBI-trained investigator and expert in investing. He taught Page and other students how to invest in markets using technical charting, options, and other strategies. While initially careful to disclaim any "advice" to his students, Broberg regularly provided advice on how to invest and which investments looked promising. Attached as Exhibit 2 is an email from Broberg sent during the seminar in which he promises to highlight two favorable investments that he had identified at that time.

13. After the seminar, Broberg began sending correspondence that provided investment advice to seminar students, including Page, while claiming that he was just providing "observations." Attached as Exhibit 3 is an example of an email chain from Broberg sent after

the seminar suggesting that Page "follow the charts" to execute her trades. That email chain also reflects Broberg's bearish investment outlook in the markets. *Id.*

14. Broberg, acting for himself and Interactive Trader, developed a relationship of trust and confidence from the seminar and continued to develop a relationship with Page in which he provided investment advice to her over the course of the following year and months.

15. Having developed a significant and lasting relationship with Page, Broberg sent an email to Page on May 7, 2020 that recommended an investment that ruined her life. Specifically, Broberg recommended a precious metals investment program that could return 80x, with $250k returning $81 million.

16. Specifically, Broberg's email claimed:

**Unique Program I recently joined**

I found a program recently that I'm more excited about than any financial opportunity I've ever seen. The Risk/Reward dynamics are amazing and one of the main reasons I joined. I personally put $250K into the program ($25K is the minimum). I do not represent the company but I'm sharing the program with anyone who will listen. It is a physical precious metals program which gives the investor the potential to make 80X more than just holding the metal by itself. For example, $250K invested in silver in this program potentially pays $81 million and that is just when silver gets back to where is was in 2011 ($25k would go to $8.1 million). Anyway, this isn't for everyone but if you want more info I would be glad to share it with you. Just email me back and let me know if you want the details.

[Exhibit 4].

17. While not disclosed in the email, this purported opportunity was an investment in a leveraged purchase of silver bullion with Treasure Coast Bullion Group and affiliates ("Treasure Coast").

18. In follow up telephone and email communications, Broberg continued to encourage Page to make the investment by, among other things, advising her that the silver price was set to explode because the silver to gold price ratio had become distorted in favor of the

price of gold, but would balance out — causing the price of silver to rise significantly. *See* Exhibits 5 and 6.

19. Broberg also claimed that he had used his FBI training to personally vet the Treasure Coast opportunity with an in person visit and other investigative techniques, and he claimed that he was certain it was a great and safe investment opportunity. Broberg did not disclose that many of the Treasure Coast representatives had been fined or faced sanctions for boiler room-type schemes, and that Treasure Coast's affiliate, Worth Group, had been sued by the Commodity Futures Trading Commission for running the very same scheme that it was running at the time of the recommendation.

20. Broberg claimed that he was putting all of his family and friends into the leveraged precious metals investment with Treasure Coast.

21. Based on his expertise in investing, his strong recommendation, and the relationship of trust that Broberg had fostered through the Interactive Trader seminar and more than a year of follow up communications, Page contacted Broberg's broker at Treasure Coast, Matthew Kehoe ("Kehoe") to discuss the opportunity, and ultimately set up a leveraged precious metals account.

22. Despite Broberg's purported thorough vetting of Treasure Coast and Kehoe, Broberg omitted to mention to Plaintiff that in the 1990s, Kehoe was fined, censured, and suspended by the National Association of Securities Dealers ("NASD") following allegations that he purchased securities in the accounts of customers without their knowledge or consent. Broberg also omitted to mention that Kehoe's career as a NASD-registered broker included stints at two separate firms that were subsequently expelled from the brokerage industry for various misconduct.

23. Kehoe continued Broberg's work of encouraging Page to invest in leveraged precious metals by claiming that she would make millions that she could use to buy rental homes and enhance her retirement. Kehoe, like Broberg, also claimed that the gold/silver price ratio was distorted and that the price of silver was set to skyrocket.

24. Kehoe employed high pressure tactics, including early morning phone calls in which he told Page that she had to make a decision quickly because the market was shifting. He also told her that she needed to liquidate her 401k retirement accounts to make the purchases because she stood to make so much money.

25. Neither Broberg nor Kehoe ever disclosed the risks of the leveraged precious metals investment offered by Treasure Coast.

26. Specifically, neither disclosed that silver would have to increase at an extraordinary rate (by historical standards) just to break even. That rate will be shown at trial to be in excess of 20% in the first year.

27. Neither Broberg nor Kehoe disclosed that Page was likely to lose some or all of her money due to markups over spot price that were charged on her trades and the accruing interest and fees in her account after her trades were executed.

28. Neither Broberg nor Kehoe provided a prospectus or written materials disclosing the risks of investing in precious metals in a leveraged bullion account.

29. Broberg did not disclose that he and/or Interactive Trader would earn a kickback or payment for referring Page to Treasure Coast.

30. Neither Broberg nor Kehoe disclosed the substantial and excessive markups and commission paid to execute transactions.

COMPLAINT FOR DAMAGES

31. More specifically, neither Kehoe nor Broberg disclosed that Treasure Coast Bullion Group charged approximately 15% above spot price to sell bullion in Page's account, which was then used to pay commissions to Kehoe, pay a referral fee to Broberg and/or Interactive Trader, and retain the rest as profits with its affiliates.

32. Broberg did not disclose that the investment he was recommending was unlawful, as it violates the Commodity Exchange Act by offering retail customers a leveraged precious metals account where the metals are not delivered within 28-days.

33. None of the material risks of the investment were disclosed by Broberg or Interactive Trader to Page even though Defendants knew that the representations about the investment, including that $250k may return $81 million, were entirely false.

34. Broberg and Interactive Trader did not disclose that the leveraged precious metals program was destined to cause significant losses to Page because the markups of bullion charged over spot, storage fees, and interest, greatly exceed the historical rate of return of silver bullion. In other words, the risks were too great to recommend the investment to anyone.

35. Broberg and Interactive Trader knew that the material representations discussed herein were false, including that Treasure Coast and Kehoe had been fully vetted, that the returns would be extraordinary ($250k would return $81 million), and that the investment was poised to create significant wealth for Page, and that Broberg was putting his family and friends into the investment, among many other things. Alternatively, they should have known.

36. Broberg and Interactive Trader omitted material facts in connection with recommending investments in the leveraged precious metals program through Treasure Coast. Specifically, Defendants never disclosed the significant investment risks and likely investment outcomes in investing in precious metals with Treasure Coast in light of the historical returns of

silver bullion compared to the break-even price of the investment. Indeed, Defendants materially omitted the fact that Page was nearly certain to lose money from the investment and that the only beneficiaries would be Treasure Coast and Defendants.

37. Defendants also omitted that the Treasure Coast investment "opportunity" was actually a fraud and a scam designed to steal investor money in violation of the Commodity Exchange Act. More specifically, the "opportunity" violated the Commodity Exchange Act by offering retail leveraged precious metals accounts where the metals are not delivered within 28-days.

38. Defendants knew these material omissions created the false impression for Page that she could trust Defendants and that the investment opportunity was a good one that could create significant wealth for her. Alternatively, Defendants should have known.

39. Page invested all of her retirement funds in the Treasure Coast's leveraged metals program beginning in May 2020. Specifically, she purchased silver on a leveraged basis by converting her retirement accounts to regular accounts. The amount invested was in excess of $3 million.

40. By May, 2022, Page liquidated her Treasure Coast account.

41. During that period of time, the price of silver increased, but she lost $2.7 million in markups, fees, interest, and commissions. Page liquidated for a little over $400,000.00 in remaining savings.

42. Page has been devastated by the loss. Not only has she lost almost her entire life's savings, but she owes the taxes from converting her retirement accounts in year 2020 on the advice of Defendants, among others. That has put ownership and possession of her home at risk.

43. Defendants are liable for participating and encouraging Page's investment in that unlawful scheme, for misrepresenting the risks of the investment, for breaching their fiduciary duty created through the training program and purported expertise and relationship of trust, and for the other causes of action alleged below.

44. All conditions precedent to this action have been satisfied or waived.

## COUNT I
## Constructive Fraud

45. Plaintiff realleges and incorporates by reference paragraphs 1 through 44 as if fully set forth herein.

46. This is a claim against Broberg and Interactive Trader for constructive fraud.

47. Defendants Broberg and Interactive Trader created a confidential relationship with Page when they undertook to provide Page with investment training and advice at and after the multi-day investing training seminar.

48. Indeed, at all times, Defendants promoted their expertise in markets and market pricing. Defendants fostered and developed a position of knowledge, trust, and power with respect to Page through seminars and regular follow-up communications on investing strategies and by providing regular investment advice in the form of purported "observations." This relationship created an equitable duty to Page, or, alternatively, trust and confidence by Page in Defendants.

49. Page, an unsophisticated investor with little knowledge of the precious metals market, relied on Defendants to advise her on the purchase of precious metals as set forth above. Plaintiff placed trust and confidence in Defendants, which they were aware of through their communications with her.

50. Defendants did not disclose the investment risks when they recommended an investment in leveraged precious metals through Treasure Coast. Rather, they touted the investment as safe with an extremely high upside potential that would make Page rich, and quickly.

51. Defendants intended to deceive Plaintiff by not disclosing material facts about the investment risks associated with investing in leveraged precious metals through Treasure Coast, and by not disclosing that Defendants would be compensated for making the investment recommendation.

52. Page relied on the investment recommendation and lack of disclosures, along with Defendants' expertise, to invest her life's savings in the Treasure Coast program.

53. Page was misled to her prejudice.

54. Page has suffered significant damages as a result, including but not limited to the loss of principal retirement savings of approximately $2.7 million.

## COUNT II
### Unjust Enrichment

55. Plaintiff realleges and incorporates by reference paragraphs 1 through 44 as if fully set forth herein.

56. This is a claim against Defendants Broberg and Interactive Trader for unjust enrichment.

57. Defendants received a benefit by reason of Plaintiffs investments in the precious metals scheme, to the detriment of Plaintiff, in the form of payment of commissions by Treasure Coast or Kehoe to Defendants.

58. Defendants appreciated, accepted, and retained the benefits received by reason of Plaintiff's investments in the precious metals scheme.

59. It would be unjust and inequitable for Defendants to be allowed to retain the benefit that was conferred to them without compensating Plaintiff.

60. Indeed, it would be unlawful for Defendants to retain the benefits received because they are not licensed broker-dealers.

61. As a result, Defendants should pay restitution for their unjust enrichment to Plaintiff.

**COUNT III**
**Negligent Misrepresentation**

62. Plaintiff realleges and incorporates by reference paragraphs 1 through 44 as if fully set forth herein.

63. This is a claim against Defendants for negligent misrepresentation.

64. Defendants provided false information to Plaintiff and omitted material information about the precious metals leveraged scheme and its risks. Specifically, Defendants assured Plaintiff at all times that the scheme was very safe, that the "risk/reward dynamics are amazing" and had the potential to provide returns of "80X more than just holding the metal by itself" and, at all times, that the precious metals market was so strong that there was no need to hedge or insure her investments. *See* Exhibit 4. Broberg misrepresented to Plaintiff that the silver and gold market would "explode at any time." *See* Exhibit 5.

65. These representations were false at the time of Plaintiff's investments and/or became false thereafter and were not corrected by Broberg or Interactive Traders.

66. Defendants should have known that the representations about the prospective leveraged precious metals program were false. Alternatively, Defendants had no reasonable grounds for believing their false statements to Page to be true.

67. Through these statements and misrepresentations, Defendants intended to deceive Plaintiff and to induce Plaintiff into investing in Treasure Coast.

68. Plaintiff justifiably relied on these false representations in making her decision to invest through Treasure Coast and to eventually increase such investments. Had Plaintiff known that these representations were false at the time of her investment, Plaintiff would not have invested in the Treasure Coast leveraged precious metals scheme. If the representations became incorrect or false at a later date, Plaintiff would have withdrawn her investments or hedge or insure such investments.

69. Plaintiff has been damaged by the negligent misrepresentations of Defendants.

70. Plaintiff's reliance on Defendant's false representations about the Treasure Coast investment opportunity was a substantial factor in causing damages to Plaintiff.

### COUNT IV
### Fraud

71. Plaintiff realleges and incorporates by reference paragraphs 1 through 44 as if fully set forth herein.

72. This is a claim against Defendants Broberg and Interactive Trader for fraudulent misrepresentations.

73. Broberg, on his own behalf and on behalf of Interactive Trader, made false and outlandish statements of material fact and omitted material facts in connection with selling Plaintiff on leveraged precious metals purchases through Treasure Coast, all as set forth herein.

74. More specifically, Defendants provided false information to Plaintiff and omitted material information about the precious metals leveraged scheme and its risks. Specifically, Defendants assured Plaintiff at all times that the scheme was very safe, that the "risk/reward dynamics are amazing" and had the potential to provide returns of "80X more than just holding

the metal by itself" and, at all times, that the precious metals market was so strong that there was no need to hedge or insure her investments. *See* <u>Exhibit 4</u>. Broberg misrepresented to Plaintiff that the silver and gold market would "explode at any time." *See* <u>Exhibit 5</u>. Defendant Broberg further misrepresented to Plaintiff, as a way to mislead her, that he was so sure of this that he invested all of his own savings, including his children's, in the scheme.

75. Defendants knew that the representations were false.

76. Defendants intended that the false representations and omissions would induce Plaintiff to invest in the precious metals transactions described herein.

77. In reliance on the respective false representations, and the relationship of trust and confidence fostered by Broberg, Plaintiff did in fact enter into transactions to purchase precious commodities.

78. Plaintiff has suffered damages as a consequence in justifiable reliance on the false representations and material omissions, all as set forth herein.

79. Plaintiff's reliance on Defendant's false representations about the Treasure Coast investment opportunity was a substantial factor in causing damages to Plaintiff.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests an award against Defendant as follows:

1. For actual damages against Defendants in an amount to be determined at trial;

2. For punitive damages against Defendants in an amount to be determined at trial;

3. For emotional distress damages for the intentional torts of Defendants;

4. For restitution of any and all sums of Defendant's unjust enrichment;

5. For consequential damages against Defendants, including but not limited to the lost investment opportunity and the tax consequences of converting Plaintiff's retirement accounts to regular accounts in order to make the investment;

6. For pre and post-judgment interest on all damages at the maximum legal rate; and

7. For such other damages and further relief as this Court deems just and proper.

### JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable, including liability and damages.

Dated this 19th day of October, 2022:

Respectfully submitted,

/s/ *Aaron M. Cohn*
Aaron M. Cohn, Esq.
SBN 264756
acohn@wwhgd.com
WEINBERG WHEELER HUDGINS GUNN & DIAL, LLC
3350 Virginia Street, Suite 500
Miami, Florida 33132
Telephone: (415) 200-7667
Facsimile: (305) 455-9501
*Attorneys for Plaintiff*